IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **DARRYL ANDRE KEYS,** | ) | **CASE NO. 8:06CV47** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **THE FUNNY BONE COMEDY CLUB OF OMAHA, INC.,** | ) ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Motion for Summary Judgment (Filing No. 50) filed by the Defendant, The Funny Bone Comedy Club of Omaha, Inc. The Plaintiff, Darryl Andre Keys, opposes the motion. Keys, a former employee of the Defendant, is an African American who claims that the Defendant failed to rehire him based on his race or color in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq. The matter has been fully briefed, and the parties have offered evidence in support of their respective positions. For the reasons set forth herein, the Court finds that there are genuine issues of material fact, and the Defendant is not entitled to summary judgment.

**Factual Background**

Keys was employed by The Funny Bone Comedy Club of Omaha, Inc., at the comedy club that was located at 114th Street in Omaha (hereafter the "114th Street club"). He worked at that club for approximately three years until it closed in June 2004, and he was the only African American employee of the club. (Filing No. 53, Keys Dep. 7:18-19). A few months after the Defendant closed the 114th Street club, on August 12, 2004, the Defendant opened a new club at the Village Pointe Shopping Center (hereafter "Village Pointe club.") Keys was advised that he would have to reapply for his job at the new club,

but it was suggested to him by Colleen Quinn, the clubs' general manager, that the re-application procedure was just a formality.

Keys submitted an application to work at the Village Pointe club as a bartender in response to advertisement published in the local newspaper. The Defendants state that Luke Pridgeon had the responsibility of hiring bartenders and wait staff for the Village Pointe Club on August 3 and 4, 2004. (Filing No. 53, Pridgeon Dep. 11:1-12:5). Keys had heard from a person with whom he had worked at the 114th Street club that Quinn was contacting people for interviews, and so Keys called Quinn to arrange for an interview. He recalls it was a Wednesday.[1] (Keys Dep. 32:3-4). During that phone call, Quinn asked Keys to come that day, but Keys declined because he could not leave work before 4 p.m. that day. (Keys Dep. 31:23-32:13). According to Keys, he made an appointment to come in for an interview the following day before he had to go to work at noon.

On August 5, Keys saw Quinn upon his arrival. Keys described Quinn as looking "puzzled" to see him there. (Keys Dep. 32:16-33:1). Quinn asked Keys what he was doing there, and when tried to refresh her memory about their telephone call the day before, Quinn apologized to him and said, "I'm sorry, I must have made a mistake." (Keys Dep. 33:2-9). Quinn told Keys that he should speak with Luke Pridgeon about a bartending position. Pridgeon and Keys spoke briefly, during which time Pridgeon told Keys that the bartender positions had been filled. Keys recalls that Pridgeon stated that the positions were filled "long ago." When Keys finished talking to Pridgeon, Keys had a conversation with Quinn before he left the club. At the time, Quinn stated that they had hired the last

---

[1] The first Wednesday in August 2004 was August 4.

2

bartender the day before, and that Keys would be the next one they would call. (Keys Dep. 45:3-17). Though other bartenders have been hired by the Village Pointe club, Quinn still has not contacted Keys about any openings.

Keys alleges that the Defendant's failure to rehire him at the Village Pointe club constitutes race discrimination. Keys claims to have direct evidence of race discrimination, referring to an inquiry made of him on behalf of Colleen Quinn seven months before Keys was denied the bartender position at the Village Pointe club. On January 19, 2004, which is the Martin Luther King, Jr. Day holiday, Cindy Johnson Lanoha asked Keys, on behalf of Quinn, whether Keys wanted to take the night off because it was the Martin Luther King, Jr. Day holiday. The suggestion was made so that Quinn's son, who also worked as a bartender at the 114th Street club, could work an additional shift. Keys stated in his deposition that the felt Quinn's inquiry demonstrated racial prejudice because Quinn could have asked him to give up his shift to her son without even mentioning the Martin Luther King, Jr. holiday. (Keys Dep. 8:13-10:13).

Discrimination in employment can be shown with either direct or circumstantial evidence of age discrimination. "Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Quick v. Wal-Mart Stores, Inc.*, 441 F.3d 606, 609 (8th Cir. 2006) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). When an employee presents direct evidence that an unlawful consideration such as race "played a motivating part in [the] employment decision," then the standards set out in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258 (1989) govern the legal analysis. In this case,

...

...

Keys holds out Quinn's communication offering to let him off the work schedule on the evening of the Martin Luther King, Jr. Day holiday as direct evidence of race discrimination. Because the comment was communicated approximately seven months before the adverse employment decision was made, it is remote in time to the adverse employment decision and the Court concludes that there is an insufficient link between the comment and the challenged decision for the inquiry to constitute direct evidence of discrimination based on race or color.

When a plaintiff has no direct evidence of age discrimination, then courts apply the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A prima facie case of discrimination in a failure-to-hire context requires a plaintiff to show that (1) he belongs to a protected class; (2) he applied and was qualified for a job for which the defendant was seeking applicants; (3) he was rejected; and (4) the defendant sought applications from others. *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1196 (8th Cir. 2006) (citing *Chambers v. Wynne Sch. Dist.*, 909 F.2d 1214, 1216 (8th Cir. 1990)). If a plaintiff can establish a prima facie case, then he presumption of unlawful discrimination drops from the case. *Kneibert v. Thomson Newspapers, Michigan, Inc.,* 129 F.3d 444, 452 (8th Cir. 1997). In the second step, the defendant must rebut a plaintiff's prima facie case by producing evidence of a legitimate, nondiscriminatory reason for taking the adverse employment action. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142 (2000). See also *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)(noting that the burden is one of production, not persuasion, and can not involve a credibility assessment). Assuming the defendant satisfies its burden, then

presumption of unlawful discrimination disappears, and the plaintiff is obliged to show that the defendant's reason for termination is a pretext for intentional race discrimination. *Kneibert*, 129 F.3d at 452.

Keys has set forth a prima facie case. He is an African America who had been employed by the Defendant for three years before his employment ended in June 2004 as a bartender. No one had criticized his work, and Quinn stated that his work performance at the 114th Street club was "fine." (Filing No. 53, Quinn Dep. 41:5-9). Based on this evidence, the Court finds that Keys has shown that he was satisfying the reasonable expectations of his employer when he was a bartender for Defendant. When he sought employment at the new club, he was not rehired. Of the bartenders who were hired to work at the new club, none was African-American. Taking these facts together, the Court concludes that Keys has demonstrated a prima facie case of race discrimination.

Having made a prima facie case, a presumption of racial discrimination arises and the burden of production shifts to the Defendant to state a legitimate, nondiscriminatory reason for refusing to rehire Keys. The Defendant states that it did not rehire Keys because, by the time that Keys presented to interview for a bartender position, the interviews for the bartending positions had already been concluded and the bartenders had been hired. Defendant contends that Keys was simply too late. The Defendant has offered evidence, including the Affidavit of Colleen Quinn, that supports the Defendant's stated reason for not rehiring Keys. Before Keys came in for his interview, the Defendant had hired three bartenders to work at the Village Pointe club: Cindy Johnson Lanoha, Jessica Guthrie, and Joe McMenamin. (Filing No. 53, Quinn Affidavit ¶¶ 4-7). The Court concludes that the Defendant has satisfied its burden; it has produced admissible evidence

5

that would permit a trier of fact to reasonably conclude that the employment decision was not motivated by discriminatory animus. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 257 (1981). Given the Defendant's response, the presumption of discrimination disappears, and the burden shifts back to Keys to provide sufficient evidence of pretext to raise a genuine issue of material fact to overcome the Defendant's motion.

The Defendant argues that Keys's evidence purporting to show pretext is insufficient to overcome its motion for summary judgment. To show that the Defendant's stated reason for refusing to hire him at the new club is a pretext for racial discrimination, Keys relies on the evidence submitted in the prima facie case, including his positive employment record at the 114th Street club, and the following evidence of pretext:

1. The inquiry by Quinn that occurred on Martin Luther King, Jr. Day in January 19, 2004;

2. The fact that Quinn did not contact him for an interview despite her assurance to him that she would contact him;

3. The inference that can be drawn from the Defendant's decision to hire Heather Mills and John Decelles as a "servers" on or about August 5 and 6, but then assigning them bartending duties as early as August 12 (for Mills) and August 22 (for Decelles); and for hiring Rachel Smith as a bartender in September 2004 (Filing No. 53, Quinn Aff.¶¶5-7); and

4. The fact that despite Quinn's assurance to Keys that he would be called as bartender positions opened up, she did not contact him for subsequent openings for bartenders.

This as a close case.  Some evidence can be viewed as supporting the Defendant's stated reason for not hiring Keys.  For example, the inquiry made by Quinn on Martin Luther King, Jr. Day could be viewed as an isolated remark made outside the context of the adverse employment decision by a decision-maker.  In addition, the fact that Quinn acted surprised to see Keys when he arrived at the club for an interview supports the Defendant's stated reason.  On the other hand, Keys has presented evidence that Quinn was acting as a decision-maker in fulfilling her scheduling function in connection with the interviews; that she did not contact Keys despite his application being timely filed and despite assurances to Keys that the application process was a formality; that Quinn failed to warn Keys during their phone conversation that coming in "the next day" would be too late; and that the Defendant hired two Caucasian employees (Mills and Decelles) as servers before Keys tried to interview, but within a few days after Keys presented for an interview, the two Caucasian employees were assigned bartending responsibilities.  When all these fact are considered, the Court concludes that Keys has provided sufficient evidence to survive Defendant's summary judgment motion.

> The Eighth Circuit Court has stated that
>
> [The Plaintiff] "can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [an unlawful consideration] was a determinative factor in the adverse employment decision."
>
>       \*      \*      \*
>
> "It is not enough, in other words, to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." . . . "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."

*Mayer v. Nextel West Corp.*, 318 F.3d 803, 807-808 (8th Cir. 2003) citations omitted.

7

Keys has presented sufficient evidence from which a reasonable jury could conclude that the Defendant's stated reason for refusing to rehire Keys is a pretext for race discrimination, or, put another way, that Keys's race or color was a motivating factor in the Defendant's decision not to rehire him.  See *Peterson v. Scott County,* 406 F.3d 515, 523 (8th Cir. 2005)(noting that in a "close case" there must be sufficient evidence in the record "to cause a jury to doubt the defendants' reasons for [the adverse employment action.])

For these reasons,

IT IS ORDERED:

Defendant's Motion for Summary Judgment (Filing No. 50) is denied.

DATED this 8th day of May, 2007.

                              BY THE COURT:

                              s/Laurie Smith Camp
                              United States District Judge